**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

GEORGE LEATHERS,

    Plaintiff,

vs.

MICHAEL MCADAMS,

    Defendant.

Case No.: 1:10-cv-931

Magistrate Judge Bowman

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against Defendant Michael McAdams, a Hamilton County Deputy Sheriff Execution Officer, alleging a deprivation of his Constitutional rights under the Fourth Amendment to the United States Constitution. (Doc. 1).[1] This matter is now before the Court on Defendant's motion for summary judgment (Doc. 23) and Plaintiff's opposition memorandum.[2] (Doc. 26). Also before the Court is Plaintiff's motion for a jury trial (Doc. 26) and Defendant's memorandum *contra.* (Doc. 28). The parties have consented to disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 11). For the reasons set forth herein, Defendant's motion for summary judgment is GRANTED in part, and DENIED in part. The Court further finds that Plaintiff's jury demand is well-taken and is herein

---

[1] Plaintiff's complaint also named Hamilton County Sheriff's Department, Sheriff Simon Leis, and City of Cincinnati as Defendants. However, the Court previously dismissed Plaintiff's claims against those defendants. (Doc. 4). Plaintiff's claim against Defendant McAdams was permitted to proceed. *Id.*

[2] Plaintiff's request for a jury demand filed on January 9, 2012 (Doc. 26), is herein construed to also include his response in opposition to Defendant's motion for summary judgment.

GRANTED.

**I. Background**

    **A. Undisputed facts**

On June 18, 2010, Plaintiff was walking on Court Street, on the way to a bus stop, carrying a beach umbrella. (Doc. 22 at 7).[3] This beach umbrella was a "large, multi-colored umbrella that people usually take to the beach with them. It [was] several different colors, green, orange, maybe red. It was extra large…six feet at least…a two-piece umbrella…an umbrella portion and…a section that would attach and stick in the sand." *Id.*

Defendant McAdams had a similar beach umbrella in his personal vehicle, as he was headed to the beach that day. (Doc. 23, Ex. 1, McAdams Aff., ¶¶2, 8). Defendant's personal vehicle was parked nearby in the parking lot on Sycamore Street, north of Central Parkway. *Id.* at ¶2. Defendant's personal vehicle had been broken into numerous times while parked in that area. *Id.* at ¶4.

Around the same time that Plaintiff was walking to the bus stop, Defendant parked his County vehicle on Court Street outside the Hamilton County Courthouse and noticed Plaintiff carrying what looked to be his beach umbrella. *Id.* at . ¶ 5.

As Plaintiff was getting onto a bus near the intersection of Court Street and Main Street, Defendant McAdams stopped Plaintiff and asked to see the umbrella. (Doc. 23, Ex 1, ¶ 7; Doc. 22 at 10). Defendant believed that a beach umbrella was a highly unusual thing for a person to carry around downtown Cincinnati. (Doc. 23, Ex. 1 at ¶6. Defendant

---

[3] Document 22 is the deposition of George Leathers.

accused Plaintiff of stealing his umbrella and asked Plaintiff where he received the umbrella and where he was headed with the umbrella. (Doc. 22, Ex. 1, ¶10; Doc. 23 at 7). At this time, however, Defendant had no knowledge that his personal vehicle had been broken into or that his umbrella was missing. (Doc. 3, Ex. 1 at 2).

Plaintiff responded that he was on his way to work and he received the umbrella from the Free Store Food bank, where he works part-time. (Doc. 22 at 10-11). Defendant found Plaintiff's answers to be suspicious. (Doc. 23, ¶7). Defendant asked Plaintiff to produce identification. (Doc. 23 at 9). Plaintiff was upset by Defendant's questioning and refused. Plaintiff and Defendant then walked to Defendant's County vehicle so that Defendant could radio for uniformed officers. *Id.*

Two Deputies arrived at the scene in uniform. (Doc. 22 at 12). The Deputies obtained Plaintiff's identification and determined that Plaintiff had no outstanding warrants. Plaintiff then took his beach umbrella left the scene. (Doc. 23, Ex. 1, ¶10). The incident lasted between fifteen and twenty minutes. (Doc. 23, Ex. 1,¶11; Doc. 22 at 13).

Upon returning to his personal vehicle, Defendant discovered that his beach umbrella was still inside and that no break in had occurred.

On June 21, 2010, Plaintiff filed a complaint with the Hamilton County Sheriff's Department. (Doc. 3, Ex. 1 at 4). Upon investigation of Plaintiff's complaint, the Sheriff's Department determined that Defendant McAdams did not have probable cause to stop Plaintiff. *Id.* at 2. A report from the investigation states in part:

> Officer McAdams admitted that the only probable cause he had in detaining Mr. Leather was that he was carrying a beach umbrella that was similar to the one owned by him, however, at the time he detained Mr. Leathers he had no knowledge as to whether his vehicle had been broken into or not. In conducting our interview with Officer McAdams it is clear that he does not

> understand the term 'probable cause' or 'reasonable suspicion.' It was explained to Officer McAdams that simply seeing someone in possession of property that is similar to that you may own is not probable cause to stop or detain that individual . . . .

(Doc. 2, Ex. 1 at 2). Thereafter, Defendant McAdams was disciplined and ordered to serve a three-day suspension. *Id.* at 3.

## II. Analysis

### A. Summary Judgment Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC*, LLC, 219 F.3d 547, 551

(6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323-24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.*, 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Plaintiff's Claims and Grounds for Defendant's Motion**

Plaintiff's complaint alleges that Defendant McAdams' conduct on June 18, 2010 violated his rights under the Fourth Amendment. As relief, Plaintiff asks the Court to "set right the wrong that was and is being done in violation of civil rights." (Doc. 3 at 4). Defendant McAdams now moves for summary judgment. (Doc. 23). Defendant argues that he is entitled to judgment as a matter of law with respect to Plaintiff's claim asserted against him in his official capacity for the reasons stated in the Court's Report and Recommendation dismissing the claims against Defendants Hamilton County Sheriff's

Office and Sheriff Simon Leis. With respect to Plaintiff's claims against Defendant in his individual capacity, Defendant argues that Plaintiff's constitutional rights were not violated and he is entitled to qualified immunity.

### 1. Plaintiff's official capacity claims fail as a matter of law.

To the extent that Plaintiff's complaint is asserting claims against Defendant McAdams in his official capacity, the undersigned agrees that those claims fail as a matter of law. As the Supreme Court has held an official-capacity suit to be the same as a suit against the entity[4], Plaintiff's official-capacity claims against Defendant McAdams fail as a matter of law because he has failed to demonstrate the existence of an official policy or custom of Hamilton County in allegedly violating his civil rights. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1998) (To subject a municipality to § 1983 liability for the actions of its employees, a plaintiff "must show that the alleged federal right violation occurred because of a municipal policy or custom."). Accordingly, Defendant McAdams is entitled to judgment as a matter of law in his official capacity.

### 2. Defendant McAdams is not entitled to summary judgment based on qualified immunity

#### A. Qualified Immunity

With respect to Plaintiff's individual capacity claims, the Court must now determine whether Defendant McAdams is entitled to qualified immunity for his actions in this case. *See Pearson v. Callahan*, 555 U.S. 23, 231 (2009). Qualified immunity protects

---

[4] See *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, (1978).

government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

**B**. **Qualified Immunity analysis on Plaintiff's unlawful seizure claim**

Defendant McAdams asserts that his actions on June 18, 2010 did not violate Plaintiff's constitutional rights ,and therefore, he is entitled to qualified immunity. The Fourth Amendment protects the rights of individuals to be free from unreasonable searches

and seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). There are three types of encounters between citizens and police which potentially implicate Fourth Amendment concerns: "consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention, or *Terry* stop, which must be predicated upon reasonable suspicion; and arrests which must be based on probable cause." *United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007) (quoting *United States v. Bueno*, 21 F .3d 120, 123 (6th Cir. 1994) (quotation marks omitted)). For purposes of summary judgment, Defendant McAdams concedes that a seizure or temporary involuntary detention did take place. (Doc. 23 at 6).

When an encounter with a police officer advances to the point of a "seizure," the officer must have reasonable suspicion of criminal activity to warrant a *Terry* stop, or probable cause to justify an arrest to comport with the Fourth Amendment. *Campbell*, 486 F.3d at 954. For purposes of a *Terry* stop, police need only a "reasonable suspicion of criminal activity" to conduct a brief investigatory detention. *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (citing *Terry v. Ohio,* 392 U.S. 347, 357 (1967)). An investigatory stop does not violate the Fourth Amendment if the officer had a "reasonable suspicion to believe criminal activity 'may be afoot.'" *U.S. v. Lugman*, 522 F.3d 613, 616 (6th Cir. 2008) (quoting *U.S. v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989)).

Reasonable suspicion is a "somewhat abstract" concept. *Ornelas v. United States,* 517 U.S. 690, 696 (1975). It requires more than just a "mere hunch," but is satisfied by a likelihood of criminal activity less than probable cause, and "falls considerably short of

satisfying a preponderance of the evidence standard." *Dorsey v. Barber,* 517 F.3d 389, 395 (6th Cir. 2008). If an officer possesses "a particularized and objective basis for suspecting the particular person ... of criminal activity" based on "specific and articulable facts" he may conduct a *Terry* stop. *Houston v. Clark County Sheriff Deputy John Does 1–5,* 174 F.3d 809, 813–14 (6th Cir. 1999) (citations and quotation marks omitted). The Sixth Circuit has determined that the reasonableness of a stop is determined by two factors: "(1) whether there was a proper basis for the stop…and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand…" *Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006), citing *U.S. v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). Courts must examine the "totality of the circumstances" to determine whether reasonable suspicion existed to justify a *Terry* stop. *Id.* In this case, applying a Fourth Amendment analysis to Plaintiff's unlawful seizure claim, the facts taken in a light most favorable to Plaintiff are sufficient to establish a violation of his constitutional rights.

For purposes of summary judgment, Defendant concedes that a seizure or temporary involuntary detention did take place. Thus, the question remains whether such stop was unlawful. As noted above, an investigatory stop does not violation the Fourth Amendment if the officer had a "reasonable suspicion to believe criminal activity 'may be afoot.'" *Lugman*, 522 F.3d at 616. Generally, questions about whether the police had a reasonable suspicion or probable cause are presented to a jury in a § 1983 case, but they may be determined by the court if "there is only one reasonable determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). As outlined by the Supreme Court:

> The principal components of a determination of reasonable suspicion or probable cause will be the events which first occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "The historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

*Ornelas v. United States*, 517 U.S. 690, 696-97 (1996) (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19 (1982)).

Here, the historical facts pertinent to the reasonable suspicion query are undisputed: 1) on June 18, 2010, Plaintiff was walking near the Hamilton County Courthouse carrying a large beach umbrella; 2) Defendant had a similar beach umbrella in his personal vehicle, which was parked in a nearby parking lot on Sycamore Street; 3) Defendant's personal vehicle had been broken into several times while parked in that area; 4) Defendant believed it was highly unusual for an individual to be carrying a beach umbrella in downtown Cincinnati; 5) Defendant stopped Plaintiff and accused him of stealing his umbrella; and 6) at the time Defendant stopped Plaintiff, he had no knowledge or specific information leading him to believe that his personal vehicle had been broken into or that the umbrella Plaintiff was carrying was his. Thus, at the time Defendant McAdams stopped Plaintiff, he had no knowledge that his personal vehicle had been broken into, nor did he attempt to make such a determination prior to stopping Plaintiff. *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued

especially when, as here, it is unclear whether a crime had even taken place."). Based upon these facts and in light of the totality of the circumstances, the Court finds that a jury could determine that Defendant McAdams did not have a reasonable suspicion that Plaintiff was involved in criminal activity as required for a lawful *Terry* stop.[5]

Additionally, Defendant's arguments to the contrary lack merit. Notably, Defendant asserts that he had a proper basis for stopping Plaintiff because : (1) he had personal knowledge of criminal activity in the area, as his car had been broken into many times before; (2) Plaintiff was coming from the general area of Defendant's parked car carrying what appeared to be Defendant's property, (3) the item at issue in this case, a beach umbrella, is a highly unusual item to see in downtown Cincinnati, and (4) Plaintiff provided suspicious answers to Defendant's questions. (Doc. 23, Ex. 1 at ¶¶2, 4, 5, 6, 7, 15). However, as detailed above, reasonable suspicion requires more than just a "mere hunch," must be based upon 'a particularized and *objective basis for suspecting the particular person ... of criminal activity.'" Houston* v. Clark County, 174 F.3d 809, 813 (6th Cir. 1999). Carrying an umbrella that is similar to one owned by Defendant McAdams, in an area known for car break-ins, does not establish an objective basis to conclude that Plaintiff is, or has been, engaged in criminal activity.

In that regard, the Sixth Circuit has made clear that reasonable suspicion does not materialize merely because a person looked suspicions and was in a high crime area. *See United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (no reasonable suspicion to

---

[5] Because the facts alleged are sufficient to establish that Defendant McAdams lacked a proper basis in which to stop Plaintiff, the degree of intrusion into the Plaintiff's personal security, although minimal, cannot be found to be "reasonably related in scope to the situation at hand…" *Smoak,* 460 U.S. at 779.

stop defendant even though defendant was in a high crime area; it was 4 a.m.; officer received a 911 call; defendant was in the vicinity of an automobile mentioned in the call; defendant did not stop when called to by police; and he threw a duffel bag into another car); *United States v. Keith*, 559 F.3d 499, 506 (6th Cir. 2009) (although suspect was in an area known for drug-trafficking and appeared to move intentionally out of the line of sight of police, it was not enough to trigger "reasonable suspicion that a crime had been committed"); *United States v. See*, 574 F.3d 309, 313–14 (6th Cir. 2009) (no reasonable suspicion even though suspect was in a high crime area at 4:30 a.m. in a dimly lit car with no front license plate). Furthermore, whether carrying a beach umbrella "in the city" is "highly unusual" and whether Plaintiff's responses to Defendant McAdam's questions were suspicious each pose questions of fact that cannot be resolved on summary judgment.

Accordingly, the facts viewed in the light most favorable Plaintiff, are sufficient to allow a reasonable jury to find that Defendant McAdams lacked reasonable suspicion to stop Plaintiff and therefore violated Plaintiff's constitutional rights. *Saucier*, 533 U.S. at 201. Furthermore, that a *Terry* stop must be based on an officer's reasonable suspicion of criminal activity has long been clearly established. *O'Malley v. City of Flint,* 652 F.3d 662, 676 (6th Cir. 2011) (citation omitted).

In light of the foregoing, the undersigned concludes that Defendant McAdams is not entitled to summary judgment on the basis of qualified immunity. At a minimum, issues of material facts remain regarding whether Defendant McAdams had reasonable suspicion to detain Plaintiff. *Rich*, 955 F.2d at 1095 (Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns.").

**C. Plaintiff's request for a jury trial is well-taken**

Although untimely, the Court also finds Plaintiff's jury demand to be well-taken. In a case in which a party has a right to a trial by jury, a demand for a jury trial must be made by "serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue...." Fed. R. Civ. P. 38(b). Although a failure to make this timely demand results in a waiver of the right, *see* Fed. R. Civ .P. 38(d), Rule 39 provides that a Court may, on motion, order a jury trial on any issue for which a jury might have been demanded. Fed. R. Civ. P. 39(b).

The Sixth Circuit has determined that a district court has broad discretion in deciding a Rule 39(b) motion and should exercise such discretion in favor of granting a jury trial where there are no strong and compelling reasons to the contrary. *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1013 (6th Cir. 1987); *see also Moody v. Pepsi-Cola Metropolitan Bottling Co., Inc.*, 915 F.2d 201, 207 (6th Cir. 1990) (citing *Kitchen* and explaining that "the court's discretion should be exercised in favor of granting a jury trial where there are no compelling reasons to the contrary"). Additionally, special consideration of an untimely request may be warranted in cases where "the party who failed to file a timely jury demand has been hailed into federal court against his will, or is proceeding pro se." *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205 n. 8 (6th Cir. 1986) (internal citations omitted).

Here, the Court finds no strong or compelling reason to deny Plaintiff's motion. Defendant does not argue that Plaintiff is not entitled to a jury trial or that he will be prejudiced or suffer any other hardship by granting Plaintiff's request. Accordingly,

Plaintiff's jury demand is well-taken and is herein granted.

**III. Conclusion**

For these reasons, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 23) is **GRANTED**, with respect to Plaintiff's claims against Defendant McAdams in his official capacity; Defendant's motion for summary judgment based on qualified immunity is **DENIED**; and Plaintiff's jury demand (Doc. 26) is **GRANTED** and this civil action shall proceed to trial by jury.

 s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge